IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

ULYSSES K. HAYES,                )
                                 )
        Plaintiff,               )
                                 )
            v.                   )       1:15cv1130(JCC/IDD)
                                 )
SOTERA DEFENSE                   )
SOLUTIONS, INC.,                 )
                                 )
        Defendant.               )

**M E M O R A N D U M   O P I N I O N**

The motion now before the Court in this matter is a
motion for summary judgment filed by Defendant Sotera Defense
Solutions, Inc. [Dkt. 44].  For the following reasons, the Court
will grant Defendant's motion for summary judgment and will
enter judgment in favor of Defendant Sotera Defense Solutions,
Inc. and against Plaintiff, Ulysses K. Hayes.

**I. Background**

The following facts are taken form parties' Local Rule
56(B) statements and are undisputed[1] unless otherwise indicated.

Plaintiff Ulysses K. Hayes is a 55 year old African-
American male and a resident of Georgia. (SOF at ¶ 1.)
Defendant Sotera Defense Solutions, Inc. ("Sotera") is a
security technology company primarily engaged in defense

_____

[1]     For ease, undisputed facts are referred to by "SOF" without
a party designation.

1

contracting. (*Id.*)   In March 2104, Sotera won the SESS NEXGEN World Wide Intel ("WWI") contract as the prime contractor on the project.   (*Id.* at ¶ 2.)   Sotera's contract win was disputed by the previously incumbent contractor on the project, ManTech International Corporation ("ManTech").   (*Id.*)   Plaintiff was incumbent in a position on the contract at Fort Gillem, Georgia, as a Field Software Engineer employed by ManTech's subcontractor, Engility.   (*Id.* at ¶¶ 4, 5.)   ManTech did not turn over any personnel files or other information containing Plaintiff's age to Sotera.   (*Id.* at ¶ 3.)   Sotera was aware that Plaintiff was the incumbent in his position on the WWI contract. (*Id.* at ¶ 4.)   On June 15, 2014, the protest was resolved and Sotera was officially awarded the WWI contract.   (*Id.* at ¶ 6.) The positions for which Sotera bid did not precisely match the incumbent positions on the WWI contract.   (*Id.* at ¶ 8.)

Before they began to staff the contract, Sotera selected subcontractors for the project and assigned certain positions on the WWI contract to those subcontractors.   (*Id.* at ¶ 9.)   General Dynamics Information Technology ("GDIT") and Telesis Corporation ("Telesis") are two of the subcontractors selected by Sotera for the WWI contract.   (*Id.* at ¶ 10.)   Both GDIT and Telesis were assigned billets at Fort Gillem on the WWI contract.   (*Id.* at ¶¶ 11, 12.)   Sotera contends that GDIT was assigned the billet for which Plaintiff was an incumbent.

(Def.'s Ex. C [Dkt. 44-2], Drake Dep. at 80.)  Plaintiff, however, contends that Mr. Hayes was a "lead" on the project, and thus reasonably believed that he was incumbent for the "senior" billet position on the new WWI contract, which had been assigned to Telesis.  (Pl.'s Mem. in Opp. [Dkt. 46], Disputed Facts, ¶ 11.)  Plaintiff has stated both that he believed that Telesis had been assigned his incumbent position, and that he had no actual knowledge of who was staffing the billet for which he was incumbent.  (Def.'s Ex. D, Hayes Dep. at 27-28, 55.) Sotera sent two emails to incumbents on the WWI contract, including Plaintiff, instructing them to submit an updated resume to a Sotera recruiting email address if they intended to apply to remain on the contract.  (SOF, ¶ 14-15.)  On March 11, 2014, Sotera sent Plaintiff an email informing him that Jessica Jones and Joseph Duble at GDIT would be his points of contact if he wished to remain in his incumbent position.  (*Id.* at ¶ 16.) Sotera misidentified GDIT as Telesis in the opening sentence of that email, but provided the correct contact information for both Ms. Jones and Mr. Duble, and identified them as employees of GDIT.  (*Id.*)

Plaintiff did not respond to these emails nor did he otherwise contact anyone at Sotera or GDIT at this time regarding the billets they were to fill at Fort Gillem.  (*Id.* at ¶¶ 14, 16-20, 22, 25-26.)  Plaintiff contends that he did not

3

receive any of the emails from Sotera or GDIT regarding his incumbent billet being assigned to GDIT or containing instructions on how to apply because he was deployed to Afghanistan. (Pl.'s Mem. in Opp., Disputed Facts, ¶ 17; Hayes Dep. [Dkt. 46-3] at 12-20, 33, 39-40.)  After Plaintiff failed to respond to emails from GDIT asking for his application, resume, and signed letter of interest, GDIT informed Sotera that Plaintiff had declined GDIT's offer of employment for his incumbent position and had "backed down."  (SOF, ¶¶ 23, 27-28.)

On June 17, 2014, GDIT submitted Freddie Jones as a candidate for the position on the WWI contract for which Mr. Hayes was the incumbent.  (*Id.* at ¶ 29.)  GDIT presented Mr. Jones to Sotera by saying, via email, that "[t]his young man is a very sharp NCO leaving the US Army," and that he was a "[g]reat fit for the Fort Gillem position."  (Pl.'s Mem. in Opp. Ex. E [Dkt. 46-5].)  Based on GDIT's representations regarding Mr. Hayes moving on, Sotera approved GDIT's hire of Mr. Jones for the Fort Gillem billet.  (SOF, ¶ 29.)  Sotera had no actual knowledge of Mr. Jones' age at the time he was presented outside of GDIT's representation that he was a very sharp "young man." (*Id.* at ¶ 31; Pl.'s Mem. in Opp., Contested Facts, ¶¶ 29, 31.) On or about June 18, 2014, Plaintiff submitted his resume and commitment letter to Mani Panickar, a staffing employee at Telesis.  (SOF, ¶ 32.)  Plaintiff contends that he clearly

articulated to Telesis that he was interested in maintaining his incumbent position at Fort Gillem, Georgia.  (Pl.'s Mem. in Opp., Additions to Facts, ¶¶ 2, 3.)  On June 19, 2014, Telesis submitted Plaintiff's resume to Sotera for consideration as a Field Software Service Engineer at Fort Benning, Georgia.  (SOF, ¶ 34.)  The position for which Plaintiff was submitted to Sotera by Telesis was not Plaintiff's incumbent position, and the position in Fort Benning is not at issue in this case.  (*Id.* at ¶ 35.)  Telesis never submitted Plaintiff to Sotera for consideration on Plaintiff's incumbent position.  (*Id.* at ¶ 36.)  Sotera considered Plaintiff for the position at Fort Benning, Georgia, but rejected his candidacy for that position because he was not qualified for the position.  (*Id.* at ¶ 39.)  On June 29, 2014, Bruce Thoms, an employee of Telesis, contacted Lisa Houle, an employee of Sotera, to determine if there were any open positions at Fort Gillem.  (*Id.* at ¶ 40.)  On July 8, 2014, Plaintiff left an angry voicemail for Ms. Houle after being informed by a third party that he had allegedly declined GDIT's offer of employment for his incumbent position.  (*Id.* at ¶ 41.)  This marked the first time Plaintiff had directly contacted Sotera regarding the position at Fort Gillem.  Approximately one to two months after Plaintiff left his voicemail for Ms. Houle, Sotera confirmed that Plaintiff had never applied to GDIT for his incumbent position.  (*Id.* at ¶ 42.)  Plaintiff did not tell

anyone at Sotera his age at any point.  (*Id.* at ¶ 45.)
Plaintiff contends that Sotera would have been able to discern
that he was over fifty years old as a result of the expertise
and experience on his resume.  (Pl.'s Contested Facts, ¶ 37-38.)
However, Plaintiff fails to dispute, and therefore concedes,
that Sotera had no actual knowledge of Plaintiff's age until he
filed his Charge of Discrimination with the U.S. Equal
Employment Opportunity Commission.  (SOF, ¶ 47.)

## II. Legal Standard

Summary judgment is appropriate only where, on the
basis of undisputed material facts, the moving party is entitled
to judgment as a matter of law.  *See* Fed. R. Civ. P. 56; *Celotex
Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  The moving party
always bears the initial burden of "informing the district court
of the basis for its motion," and identifying the matter "it
believes demonstrate[s] the absence of a genuine issue of
material fact."  *Celotex,* 477 U.S. at 323.  Once a motion for
summary judgment is properly made and supported, the opposing
party has the burden of showing that a genuine dispute exists.
*See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.
574, 586-87 (1986); *see also Ray Commc'ns, Inc. v. Clear Channel
Commc'ns, Inc.*, 673 F.3d 294, 299 (4th Cir. 2012) (stating the
opposing party must "come forward with specific facts showing
that there is a genuine issue for trial.").  "[T]he non-moving

party 'may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.'" *Hughes v. Bedsole,* 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986)).  Pursuant to Local Rule 56(B), the non-moving party's opposition briefs must make a "good faith effort to specifically identify which material facts are genuinely in dispute." *Integrated Direct Mktg., LLC v. May*, 129 F. Supp. 3d 336, 346 (E.D. Va. 2015.)  Any facts listed in the moving party's listing of material facts which are not specifically controverted in the non-moving party's statement of facts in opposition to the motion will be deemed to be admitted for purposes of the motion for summary judgment.  *See* Local Civ. R. 56(B).

In reviewing the record on summary judgment, the Court "must draw any inferences in the light most favorable to the non-movant" and "determine whether the record taken as a whole could lead a reasonable trier of fact to find for the non-movant." *Brock v. Entre Computer Ctrs., Inc.*, 933 F.2d 1253, 1259 (4th Cir. 1991) (citations omitted).  "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249.  Where there is conflicting evidence, the court must

7

credit the evidence of both sides and acknowledge that there is a genuine issue of material fact that cannot be resolved by summary judgment.  *See Tolan v. Cotton*, 134 S. Ct. 1861, 1868-69 (2014) (stating that summary judgment is inappropriate where each side has put forward competent evidence that raises a dispute about a material fact).

### III. Analysis

#### A.   Admissibility of Emails

As a preliminary matter, Plaintiff contests several of Defendant's proposed uncontested facts as supported only by inadmissible evidence.  Specifically, Plaintiff contests the admissibility of the emails sent from Sotera to Plaintiff providing him with instructions on how to apply to remain in his incumbent position and contests the admissibility of emails between GDIT, Telesis, and Sotera regarding Plaintiff's interest, or lack thereof, in remaining in his incumbent position.  (Pl.'s Mem. in Opp. at 3-6.)  Rule 56(c)(2) of the Federal Rules of Civil Procedure provides that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would admissible in evidence."  Plaintiff argues that these emails are inadmissible hearsay.  (Pl.'s Mem. in Opp. at 3.)

Federal Rule of Evidence 802 provides that "[h]earsay is not admissible" unless a federal statute, the Federal Rules

8

of Evidence, or other rules prescribed by the Supreme Court provide otherwise.  Fed. R. Evid. 802.  Federal Rule of Evidence 801(c) defines "hearsay" for purposes of Rule 802 as an out of court statement which "a party offers in evidence to prove the truth of the matter asserted in the statement."  Fed. R. Evid. 801(c).  While emails are out of court statements for purposes of the hearsay rules, neither the emails between Sotera and Plaintiff nor the emails between Sotera and its subcontractors are being offered to prove the truth of the matter asserted therein.

The emails between Sotera and its subcontractors are being offered only to show that Sotera believed Plaintiff was not applying to remain in his incumbent position, not to show that Plaintiff did not actually apply for the position at issue. The emails therefore are not hearsay, as they are being offered only to show their effect on the listener, Sotera.  *See United States v. Safari*, 849 F.2d 891, 894 (4th Cir. 1988) (statement not hearsay where offered to show effect on the listener or listeners' state of mind).  Sotera's emails to Plaintiff are being offered only to show that Sotera at least attempted to provide Plaintiff with instructions on how to apply to remain in his incumbent position, not to demonstrate what the actual application procedures were.  In other words, they are being offered only to show that they were sent, not to demonstrate the

truth of the matter asserted.  It is well established that "'evidence is not hearsay when it is used only to prove that a prior statement was made and not to prove the truth of the statement.'" *United States v. Ayala*, 601 F.3d 256, 272 (4th Cir. 2010) (quoting *Anderson v. United States*, 417 U.S. 211, 220 n.8 (1974)).  Because neither the emails between Sotera and Plaintiff nor the emails between Sotera and its subcontractors are hearsay as defined by Federal Rule of Evidence 801(c), and they are not otherwise inadmissible, the Court may consider them at this stage.  The Court therefore deems as admitted all of Defendant's proposed undisputed facts to which Plaintiff objects solely on the admissibility grounds discussed above.

### B.  Merits of Plaintiff's ADEA Claim

To succeed with a claim under the Age Discrimination in Employment Act ("ADEA"), a plaintiff "must prove, by the preponderance of the evidence, that age was the 'but for' cause of the challenged adverse employment action." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009).  A plaintiff can show cause either through direct evidence of intentional discrimination or through the indirect, burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), and its descendants.  *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142-13 (2000); *St. Mary's Honor Ctr. V. Hicks*, 509 U.S. 502, 506-07 (1993).  Under the *McDonnell*

*Douglas* burden shifting scheme, once the plaintiff makes a prima facie case of age discrimination, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action" or "but for" causation will be presumed. *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004) (abrogated on other grounds).

To establish a prima facie ADEA age discrimination case under the adapted *McDonnell Douglas* scheme, a plaintiff must show (1) he is a member of the protected class, namely "individuals who are at least 40 years of age," 29 U.S.C. § 631(a); (2) he applied for and was qualified for the position; (3) he was rejected despite his qualifications; and (4) the position remained open or was filled by a substantially younger person. *See Hill*, 354 F.3d at 285; *Henson v. Liggett Grp., Inc.*, 61 F.3d 270, 274 (4th Cir. 1995); *Arthur v. Pet Diary*, 593 F. App'x 211, 217 (4th Cir. 2015). The failure to apply for the position at issue is fatal to a prima facie case of age discrimination unless the plaintiff "can demonstrate that 'he would have applied but for accurate knowledge of an employer's discrimination and that he would have been discriminatorily rejected had he actually applied.'" *Brown v. McLean* 159 F.3d 898, 902 (4th Cir. 1998) (quoting *Pinchback v. Armistead Homes Corp.*, 907 F.2d 1447, 1451 (4th Cir. 1990)); *see also Wilson v. Dollar General Corp.*, No. 4:14-cv-00033, 2014 WL 6609104, at *3

11

(W.D. Va. Nov. 20, 2014) ("[P]ut most simply, in the absence of
a job application, there cannot be a failure-to-hire.") (quoting
*Velez v. Janssen Ortho, LLC*, 467 F.3d 802, 807 (1st Cir. 2006)).

          Here, it is undisputed that Plaintiff did not apply to
Sotera for a position at Fort Gillem through either GDIT or
Telesis until at least June 29, 2014.  Plaintiff argues that he
applied for his incumbent position through Telesis on June 18,
2014 by submitting his resume and commitment letter to Mani
Panickar at Telesis.  (Pl.'s Supplemental Mem. at 2-3.)
However, the record is clear that neither Telesis nor Plaintiff
himself submitted Plaintiff to Sotera for his incumbent
position.  Rather, on June 19, 2014, Telesis submitted Plaintiff
to Sotera for an entirely separate position at Fort Benning,
Georgia.  Plaintiff asserts, without offering any legal argument
or supporting case law, that applying to one of Sotera's
subcontractors was "equivalent to applying with Sotera."[2]  (*Id.*
at 2.)  Plaintiff makes this conclusory assertion despite
conceding that Telesis and Sotera are separate entities and are
not joint employers.  (*Id.* at 2 n.1.)  The court declines to

---

[2]     Even after the court requested supplemental briefing on the
issue of whether Plaintiff had actually applied to Sotera for
the position at issue, Plaintiff still has yet to cite a single
case in support of his position that an application to one of
Sotera's subcontractors is equivalent to an application to
Sotera.  *See* Local Rule 7(F)(1)("All motions . . . shall be
accompanied by a written brief setting forth a concise statement
of the facts and supporting reasons, along with a citation of
the authorities upon which the movant relies.").

adopt Plaintiff's view that applying to Telesis for a position was equivalent to applying to Sotera.  Where parties are neither joint employers nor integrated employers, the actions taken by, and the information available to, the contractor or subcontractor staffing the position may not be automatically attributed to the principal.  *See Rickets v. Vann*, 32 F.3d 71, 74 (4th Cir. 1994) (watermelon grower not joint employer and therefore not liable under the Agricultural Worker Protection Act for actions attributable to farm labor contractors); *McGee-Fuller v. Greenville Transit Authority*, No. 6:05-2616, 2006 WL 1328253, at *5 (D.S.C. May 12, 2006) (no liability under Title VII where defendant was neither a joint employer nor an integrated employer).  Therefore, the Court finds that applying to Telesis was not equivalent to applying to Sotera.

There is no evidence in the record suggesting that Telesis or anyone else ever conveyed Plaintiff's interest in remaining in his incumbent position to Sotera.  In fact, the only communications in the record which were received by Sotera during the relevant time period dealing with Plaintiff's interest in applying for his incumbent position are the emails from GDIT affirmatively indicating that Plaintiff was *not* interested in maintaining his incumbent position at Fort Gillem. Telesis conveyed to Sotera that Plaintiff was interested in a different position at Fort Benning.  No reasonable juror could

find that Sotera should have somehow divined Plaintiff's interest in remaining in his incumbent position from Telesis's proposal of Plaintiff for a distinct position at a separate location.  If anything, the fact that Telesis was proposing Plaintiff for a different position would only have confirmed Sotera's belief that Plaintiff was not interested in applying for his incumbent position.

Plaintiff makes much of Sotera's allegedly confusing application process.  However, Sotera sent Plaintiff several emails, including one in which they explicitly identified the employees of GDIT to which Plaintiff should have directed his application to remain in his incumbent position.  (SOF, ¶¶ 14-16.)  Plaintiff asserts that he did not receive these emails. His receipt of the emails is not relevant in this case.  The ADEA does not require Sotera to maintain a perfect or intuitive application system.  The reason behind Plaintiff's failure to apply is irrelevant so long as it was not "accurate knowledge of an employer's discrimination and that he would have been discriminatorily rejected had he actually applied." *Brown*, 159 F.3d at 902 (quoting *Pinchback* 907 F.2d, at 1451 (4th Cir. 1990)).  Plaintiff does not argue that he refrained from applying because of accurate knowledge that he would be discriminated against.  Indeed, Plaintiff maintains that he did try, albeit ineffectively, to apply for the position at Fort

14

Gillem.  While Sotera's application process may have been
confusing, Plaintiff does not allege, nor does the record
demonstrate, that it was designed to discourage older applicants
from applying.

The record is clear that Sotera did not receive an
application from Plaintiff for the position at issue prior to
filling it with Mr. Jones.  Sotera did not even casually hear
that Plaintiff was interested in a position at Fort Gillem until
the email form Mr. Thoms at Telesis to Ms. Houle at Sotera on
June 29, 2014, ten days after Mr. Jones had already been offered
and accepted the position at Fort Gillem.  (SOF, ¶ 40.)  Simply
put, Plaintiff cannot point to any evidence in the record which
could support a finding that he applied to Sotera to remain in
his incumbent position prior to Sotera filling the position with
Mr. Jones.  Nor is there any evidence to suggest that Plaintiff
was "inhibited from applying because of the employer's
discriminatory practices." *Robinson v. Montgomery Ward and Co.,
Inc.*, 823 F.2d 793, 796 (4th Cir. 1987).  Plaintiff attempted to
apply for the position at issue, but he failed to effectively do
so.  Because Plaintiff did not apply for the position at issue,
he cannot establish even a prima facie case of age
discrimination, and his claim of age discrimination must fail.
Accordingly, the Court will enter summary judgment for
Defendant.

15

**IV. Conclusion**

For the foregoing reasons, the Court grants

Defendant's Motion for Summary Judgment.

An appropriate Order shall issue.

<table>
<tr><td></td><td>/s/</td></tr>
</table>

|  |  |
|---|---|
| May 12, 2016 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |

16